IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Henry Unseld Washington,<br><br>       Plaintiff,<br>  vs.<br><br>Jonathan Barnhart, Dr. Robinson, Richard Irwin, Mark Mayle, Dr. Hutchinson, J. Stramat, Angela Johnston, Roxanne Playso, Brian P. Hyde, Tesa Adelekan, B. Costea, Lt. Cinko, J. R. Mcdonnell, M. J. Foster, K. Turner, William Bowers, Phillip Maust, Heidi Sroka, Robert Snyder, R. Peschock, J. Girone, and Ellis Kauffman,<br><br>       Defendants. | CIVIL DIVISION<br><br>3:17-cv-00070-KRG-LPL<br><br>Code:<br><br>Issue No:<br><br>**CONCISE STATEMENT OF MATERIAL FACTS ON BEHALF OF MARK MAYLE, MD**<br><br>Filed on Behalf of Mark Mayle, Defendant<br><br>Counsel of Record for this Party:<br><br>M. Brian O'Connor, Esquire<br>PA I.D. 56795<br><br>Julia F. Kurtz, Esquire<br>PA I.D. 322913<br><br>MATIS BAUM O'CONNOR<br>Firm #983<br>912 Fort Duquesne Blvd<br>Pittsburgh, PA 15222<br>(412) 338-4750<br><br>JURY TRIAL DEMANDED<br>*Electronically Filed* |

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Henry Unseld Washington,<br><br>        Plaintiff,<br>  vs.<br><br>Jonathan Barnhart, Dr. Robinson, Richard Irwin, Mark Mayle, Dr. Hutchinson, J. Stramat, Angela Johnston, Roxanne Playso, Brian P. Hyde, Tesa Adelekan, B. Costea, Lt. Cinko, J. R. Mcdonnell, M. J. Foster, K. Turner, William Bowers, Phillip Maust, Heidi Sroka, Robert Snyder, R. Peschock, J. Girone, and Ellis Kauffman,<br><br>        Defendants. | CIVIL DIVISION<br><br>3:17-cv-00070-KRG-LPL<br><br>Code: |

## CONCISE STATEMENT OF
## MATERIAL FACTS ON BEHALF OF MARK MAYLE, MD

AND NOW, comes Defendant Mark Mayle, M.D., by and through his counsel, M. Brian O'Connor, Esquire, Julia F. Kurtz, Esquire, and Matis Baum O'Connor, pursuant to Federal Rule of Civil Procedure 56, U.S. Dist. Ct. Rule W.D.Pa.L.R. 56 and this Honorable Court's Order of May 15, 2020 (ECF 184), and hereby moves this Honorable Court to enter summary judgment in his favor and dismiss all claims against him with prejudice. Dr. Mayle's Motion for Summary Judgment, Memorandum in Support, and Appendix have been filed contemporaneously hereto and are incorporated herein by reference as though fully set forth below. Dr. Mayle hereby sets forth his Concise Statement of Material Facts, as follows:

1.    Henry Unseld Washington is a senior, male inmate currently incarcerated at State Correctional Institution at Somerset ("SCI Somerset"). Exh A. He has been incarcerated for over twenty-five years and is serving a life sentence. Exh. C at MBO 112.

2.    Mark Mayle, MD is a board-certified Ophthalmologist.

3. In 2014-2015, Dr. Mayle provided care to inmates incarcerated at SCI Greene.

**I.    Treatment involving Dr. Mayle**

4. On August 26, 2014, Byunghak Jin, MD, the SCI Greene Site Medical Director, approved an ophthalmology consultation for Mr. Washington. Exh. B at MBO 23.

5. Mr. Washington's distance visual acuity without refractive correction (sc) was 20/400 in his right eye (OD), left eye (OS), and in both eyes (OU). Exh. B at MBO 23. Mr. Washington's distance visual acuity with refractive correction was 20/80 in his right eye (OD), 20/200 in his left eye (OS), and 20/80 in both eyes (OU). *Id.*

6. Mr. Washington's near visual acuity without refractive correction (sc) was 20/400 in his right eye (OD), left eye (OS), and in both eyes (OU). *Id.*. Mr. Washington's near visual acuity with refractive correction was 20/200 in his right eye (OD), left eye (OS), and in both eyes (OU). *Id.*

7. Based on these findings, Dr. Jin determined that Mr. Washington met the criteria for cataract evaluation. *Id.*

8. On September 30, 2014, Plaintiff presented to the offices of Dr. Mayle for a cataract evaluation. Exh. B at MBO 10.

9. Mr. Washington's best visual acuity with refractive correction was 20/200 in his right eye (OD) and 20/50 in his left (OS). Exh. B at MBO 12.

10. Dr. Mayle determined that the patient had dense cataracts in both eyes (OU), and he required cataract extraction in his right eye (OD). Exh. B at MBO 23.

11. On October 8, 2014, Dr. Jin indicated that the patient's vision was worse in his right eye (OD) and approved a right (OD) cataract extraction for Mr. Washington to be performed on November 17, 2014 by Dr. Mayle. Exh. B at MBO 24. Dr. Jin also approved post-operation

2

follow up visits to be scheduled for November 18, 2014 and November 25, 2014. Exh. B at MBO 25.

12. On November 4, 2014, a pre-operation history and physical was done, and the patient was cleared for a cataract extraction on his right eye. Exh. B at MBO 24.

13. Mr. Washington executed a consent form for the monofocal intraocular lens (IOL) and glasses option. Exh. B at MBO 7. The consent form explains that, "If a Monofocal IOL is implanted, either distance or reading glasses or contacts will be needed after cataract surgery for adequate vision." Exh. B at MBO 4.

14. On November 17, 2014, Dr. Mayle performed an extracapsular cataract extraction (phacoemulsification) with posterior chamber intraocular lens implant on Mr. Washington's right eye (OD). Exh. B at MBO 40-41. The procedure was complex, due to the hypermature nature of the cataract, but went well with no known complications arising as a result of the procedure. Exh. B at MBO 41.

15. On November 18, 2014, Dr. Mayle provided a post-operative consultation to Mr. Washington. Exh. B at MBO 25. He indicated that the patient was experiencing a reaction due to the complex nature of the surgery, but he was doing well. *Id.*

16. On November 24, 2014, Dr. Mayle evaluated the patient again. Exh. B at MBO 16. His vision measured 20/70 in his right eye (OD). *Id.* At this visit, Dr. Mayle noted that three sutures were exposed, and the iris was becoming incarcerated into the cataract surgery wound (CSW). *Id.* Dr. Mayle indicated that a revision was required. *Id.*

17. On December 23, 2014, Dr. Mayle evaluated Mr. Washington. Exh. B at MBO 17. Mr. Washington complained that his vision was constantly blurry at distance and near, but he

denied pain. *Id.* Mr. Washington's intraocular lens (pseudophakia) in his right eye (OD) was noted. *Id.*

18. Despite Mr. Washington's complaints, his vision without refractive correction (sc) measured 20/100 in his right eye (OD) and 20/300 in his left eye (OS). *Id.* His vision with refractive correction in his right eye (OD) measured 20/20-2. *Id.*

19. Dr. Mayle discussed with Mr. Washington that he would require another procedure to resolve the wound. *Id.*

20. Dr. Mayle's findings and recommendations included a request to SCI Greene to schedule the patient for surgery in January. Exh. B at MBO 27. Dr. Mayle noted that, although the patient's eye was not currently infected, Mr. Washington was at risk for developing an infection. *Id.*

21. On February 3, 2015, Mr. Washington attended an office visit with Dr. Mayle. Exh. B at MBO 18. Dr. Mayle examined the patient and obtained a history and physical. *Id.* Mr. Washington was cleared for surgery to correct the iris wound in his right eye (OD). Exh. B at MBO 18, 28. Mr. Washington executed consent forms for the procedure. Exh. B at MBO 18. The consent form indicates that some of the known risks for this type of procedure include bleeding, pain, loss of eye and vision. Exh. B at MBO 8-9.

22. On February 16, 2015, Dr. Mayle performed a wound revision with repositioning of the iris tissue on the patient's right eye (OD). Exh. B at MBO 45-46. The procedure went well, without any known complications arising from the procedure. *Id.*

23. On February 17, 2015, Dr. Mayle evaluated Mr. Washington for a one-day follow up from the iris wound revision surgery. Exh. B at MBO 19. Mr. Washington complained of pain during the night but reported that it had resolved by the time of the appointment. *Id.* Mr.

4

Washington stated that he could see a red light, and he had light perception (LP) in his right eye (OD). *Id.*

24. Dr. Mayle noted that the right eye (OD) wound revision had a good appearance, but there was blood in the patient's right eye (OD). Exh. B at MBO 19, 29. Dr. Mayle prescribed a steroid, Durezol, to be administered six times per day, in addition to an antibiotic. *Id.* Dr. Mayle recommended a follow up visit in two to three weeks. *Id.*

25. On February 24, 2015, Dr. Mayle evaluated the patient for a one-week follow up visit. Exh. B at MBO 20.

26. Mr. Washington reported that his vision in his right eye (OD) had improved. *Id.* However, he complained of soreness in his right eye (OD) and that he was seeing two black spots. *Id.*

27. Despite Mr. Washington's complaints, his vision without refractive correction (sc) in his right eye (OD) measured 20/40-2. *Id.*

28. Dr. Mayle noted that Mr. Washington was doing well. *Id.* He had finished the Durezol steroid drops, the iris wound repair had a good appearance, and the patient was making good progress. *Id.*

29. On March 31, 2015, Mr. Washington presented to Dr. Mayle's office for a follow up. Exh. B at MBO 22. Mr. Washington complained of foggy vision at distance and near. *Id.* Despite Mr. Washington's complaints, his vision without refractive correction (sc) was 20/70 in his right eye (OD). *Id.* His vision with refractive correction was 20/40 in his right eye (OD). *Id.*

30. Dr. Mayle noted that Mr. Washington's iris prolapse had improved, prescribed Durezol steroid drops to be administered twice per day, and requested a follow-up appointment in six to eight weeks. Exh. B at MBO 31.

5

31. On May 5, 2015, Dr. Mayle performed a comprehensive exam on Mr. Washington to monitor the patient's lens in his right eye (OD). Exh. B at MBO 21. Mr. Washington's vision without refractive correction (sc) was 20/200 in his right eye (OD) and 20/50+2 in his left eye (OS). *Id.* Mr. Washington's vision with refractive correction was 20/50 in his right eye (OD) and 20/NI (no improvement) in his left eye (OS). *Id.*

32. Dr. Mayle's consultation notes included a notation that Mr. Washington's vision after the surgery and wound revision in his right eye (OD) was slightly nearsighted with an astigmatism. Exh. B at MBO 32.

33. Dr. Mayle's consultation notes also included that the patient had mild posterior capsular opacity (PCO) and would require a re-check in the fall. *Id.*

34. Importantly, Dr. Mayle's consultation notes documented that the patient would require glasses to correct the posterior capsular opacity (PCO). *Id.*

35. On May 6, 2015, Dr. Jin recommended that the patient see an optometrist for glasses to correct the patient's vision in his right eye (OD). Exh. C at MBO 178. Dr. Jin placed an order for the patient be seen at the optometry clinic to be evaluated for glasses to correct the vision in his right eye (OD). Exh. C at MBO 198.

36. Dr. Jin also ordered that Mr. Washington be seen at the PA/MD line in September 2015 regarding follow up with the patient's posterior capsular opacity (PCO) in his right eye (OD). *Id.*

37. On May 27, 2015, Barry Russell, OD, an optometrist, administered a Snellen Visual Acuity Test. Exh. C at MBO 218.

38. Mr. Washington's distance visual acuity without refractive correction (sc) was 20/100 in his right eye (OD), 20/200 in his left eye (OS), and 20/100 in both eyes (OU). *Id.* Mr.

Washington's distance visual acuity with refractive correction was 20/20 in his right eye (OD), left eye (OS), and both eyes (OU). *Id.*

39.  Mr. Washington's near visual acuity without refractive correction (sc) was 20/50 in his right eye (OD), 20/70 in his left eye (OS), and 20/50 in both eyes (OU). *Id.* Mr. Washington's near visual acuity with refractive correction was 20/20 in his right eye (OD), left eye (OS), and both eyes (OU). *Id.*

40.  On June 21, 2015, Mr. Washington wrote a letter to Dr. Mayle, in which he complained that his vision in his right eye (OD) had decreased fifty percent. Exh. B at MBO 50. Dr. Mayle noted that he had reviewed the letter, but he was unable to respond to the patient due to his status as an inmate and the policies regarding communication. *Id.*

## II.  Relevant Subsequent Treatment

41.  On or near July 14, 2015, Mr. Washington was transferred from SCI Greene, located in Waynesburg, PA, to SCI Somerset, located in Somerset, PA. ECF No. 63 at ¶ 400.

42.  On July 14, 2015, SCI Somerset completed an Intake Screening, and Mr. Washington reported that he was feeling well. Exh. C at MBO 172.

43.  On August 4, 2015, Mr. Washington was seen at the SCI Somerset infirmary, where he complained that he needed his eyes checked and that his stomach hurt. Exh. C at MBO 170. Angela Johnston, CRNP administered a Snellen test. *Id.* Mr. Washington's near visual acuity was 20/70 in his right eye (OD), 20/40 in his left eye (OS), and 20/30 in both eyes (OU). *Id.*

44.  On October 21, 2015, Mr. Washington was seen by a physician at the SCI Somerset infirmary. Exh. C at MBO 163. Mr. Washington was complaining of a need for a follow up for his eye status post pseudophakia repair. *Id.* This physician wrote that an optometry consultation would be ordered, and that they would check the patient's old records. *Id.*

7

45. D. Benford, RN ordered an optometry consult for refraction. Exh. C at MBO 195.

46. On October 24, 2015, a physician at SCI Somerset noted that Mr. Washington would need a consult with Daniel Vittone, MD, an ophthalmologist, regarding the patient's left eye (OS) cataracts. Exh. C at MBO 163.

47. On October 29, 2015, S. Hause, RN ordered an ophthalmology consult with Dr. Vittone regarding the patient's left eye (OS). Exh. C at MBO 195.

48. On October 27, 2015, Richard Irwin, OD, an optometrist, examined Mr. Washington. Exh. C at MBO 217. He noted that the patient "may need ophthalmology consult regarding the cataract in his left eye." *Id.* He instructed to "hold off on eyeglasses." *Id.*

49. On November 24, 2015, Jonathan Barnhart, MD ordered an ophthalmology consult with Dr. Vittone with regard to the patient's left eye (OS) cataracts. Exh. C at MBO 195.

50. On December 3, 2015, Dr. Irwin administered a Snellen Visual Acuity Test. Exh. C at MBO 216.

51. Mr. Washington's distance visual acuity without refractive correction (sc) was 20/200 in his right eye (OD), 20/70 in his left eye (OS), and 20/70 in both eyes (OU). *Id.*

52. Mr. Washington's near visual acuity without refractive correction (sc) was 20/50 in his right eye (OD), 20/200 in his left eye (OS), and 20/40 in both eyes (OU). *Id.*

53. On January 21, 2016, Dr. Barnhart noted in the patient's chart that Mr. Washington could place sick call requests; however, the sick call request must only contain one problem. Exh. C at MBO 192. Dr. Barnhart specifically noted that the patient's eye complaints were being addressed. *Id.*

54. On March 24, 2016, Dr. Vittone performed a PHACO emulsification with insertion of lens implant on the patient's left eye (OS) to correct a cataract. Exh. C at MBO 205.

55. On March 29, 2016, Roxane Playso, PAC examined Mr. Washington at sick call. Mr. Washington stated, "I seen the ophthalmologist. he said I'm supposed to get surgery in my right eye." Exh. C at MBO 157. Roxane Playso, PAC noted the patient's history of a cataract in his right eye (OD) in 2014, and that she would discuss the patient's cataracts with the physician. *Id.*

56. On March 31, 2016, Dr. Barnhart placed an order for an ophthalmology consult with Dr. Vittone to follow up with that patient's cataract surgery. Exh. C at MBO 190.

57. On April 7, 2016, Dr. Barnhart ordered an ophthalmology consult with Dr. Vittone to conduct a three-week follow up on the patient's left eye (OS) cataract surgery. Exh. C at MBO 189.

58. On April 22, 2016, Dr. Barnhart ordered an optometry consult regarding Mr. Washington's right eye (OD). *Id.*

59. On April 27, 2016, Plaintiff was seen at sick call for complaints of a red eye for several days. Exh. C at MBO 155. Mr. Washington denied any visual disturbances, discharge, or drainage. *Id.*

60. On June 1, 2016, Angela Johnston, CRNP examined Mr. Washington at sick call. Exh. C at MBO 152. Mr. Washington complained that the vision in his right eye was blurry. *Id.* Angela Johnston, CRNP noted that the patient had been seen by Dr. Irwin, whose findings and recommendations included refraction. *Id.*

61. On June 17, 2016, Roxane Playso, PAC examined Mr. Washington at sick call. *Id.* She noted the patient's complaints of decreased vision in his right eye, and that he was seen by optometry in May of 2016. *Id.*

62. Importantly, Roxane Playso, PAC noted the patient's history of a cataract and stated that he did not meet the criteria for surgical referral. *Id.*

9

63. On July 11, 2016, Roxanne Playso, PAC examined Mr. Washington. Exh. C at MBO 153. He complained that his vision in his right eye (OD) was getting worse. Exh. C at MBO 153.

64. Mr. Washington's near visual acuity with refractive correction (sc) was 20/400 in his right eye (OD), 20/70 in his left eye (OS), and 20/70 in both eyes (OU). *Id.* Mr. Washington's distance visual acuity with refractive correction was 20/100 in his right eye (OD), 20/70 in his left eye (OS), and 20/70 in both eyes (OU). *Id.*

65. Accordingly, Roxanne Playso, PAC ordered an optometry consult. Exh. C at MBO 153, 188.

66. On August 16, 2016, Dr. Irwin evaluated Mr. Washington. Exh. C at MBO 214. He noted that the patient's vision was better in his left eye (OS) after cataract surgery, but that the patient's vision was decreasing in his right eye (OD). *Id.*

67. Dr. Irwin's findings and recommendations included refraction, and he wrote that the patient "may need ophthalmology consult in right eye." *Id.*

68. On September 12, 2016, John Stramat, MD evaluated Mr. Washington. Exh. C at MBO 148. Dr. Stramat noted that the patient had undergone a cataract repair in his left eye (OS) in March of 2016. *Id.* Dr. Stramat also noted the patient had undergone a cataract extraction in his right eye (OD) in November 2014 and surgery to correct his iris incarceration in February 2015. *Id.*

69. Dr. Stramat documented that the patient's vision had ended up slightly nearsighted and he had an astigmatism. *Id.* Dr. Stramat questioned whether the patient would need further follow up with ophthalmology or whether he could follow up with optometry, and he indicated that he would speak to the SCI Somerset Site Medical Director regarding this issue. *Id.*

70. On October 17, 2016, S. Krepelka, LPN, examined Mr. Washington at sick call. Exh. C at MBO 147. He complained of several issues, including not being able to see out of his right eye (OD) and low heart rate. *Id.* The patient's history of a right eye (OD) cataract was noted. *Id.*

71. Accordingly, S. Krepelka, LPN, ordered a referral to optometry to address Mr. Washington's distance vision in his right eye (OD). Exh. C at MBO 147, 186.

72. On December 21, 2016, Ellis Kaufman, PAC ordered an optometry consult for a Snellen test. Exh. C at MBO 184.

73. Although the test is not dated, Ellis Kaufman, PAC signed a Snellen Visual Acuity Test result. Exh. C at MBO 212. Mr. Washington's distance visual acuity without refractive correction (sc) was 20/50 in his right eye (OD), left eye (OS), and both eyes (OU). *Id.* Mr. Washington's near visual acuity without refractive correction (sc) was 20/70 in his right eye (OD), left eye (OS), and both eyes (OU). *Id.*

74. On December 27, 2016, Dr. Irwin evaluated Mr. Washington. Exh. C at MBO 211. Dr. Irwin noted that the patient was experiencing decreased vision in his right eye (OD) and that the patient's vision was not corrected with the lens. *Id.* Dr. Irwin's findings and recommendations included refraction. *Id.* However, Mr. Washington refused glasses. *Id.*

75. On May 18, 2017, Mr. Washington filed his original Complaint in the Western District. ECF 11.

76. On August 9, 2017, Roxanne Playso, PAC, noted that Mr. Washington was being referred to optometry. Exh. C at MBO 181.

77. On October 18, 2017, Dr. Irwin examined Mr. Washington. Exh. C at MBO 210. He noted that the patient had a retina scar in this right eye (OD). Exh. *Id.* Dr. Irwin's findings and recommendations included refraction. *Id.*

78. Dr. Irwin noted the patient's history of cataract surgery and iris prolapse. *Id.* Dr. Irwin also noted that "the patient still gets angry and believes surgery can improve right eye. Inmate refuses glasses." *Id.*

79. On December 7, 2018, Mr. Washington filed his Amended Complaint. ECF 63.

### III. Department of Corrections Policies

80. Pursuant to the Pennsylvania Department of Corrections' Policy 13.02.01: Access to Health Care, when an inmate is transferred to a different facility, the receiving facility assumes medical responsibility for the inmate prior to transfer. Exh. D at MBO 559 (Policy 13.02.01 § 17.B.7.c).

81. Pursuant to the Pennsylvania Department of Corrections' Policy 13.02.01: Access to Health Care, off-site specialty medical consultations require approval, and the patient is seen within sixty days of the approval, excluding stat orders. Exh. D at MBO 316 (Policy 13.02.01: § 1.A.n.2). *See also* Exh. D at MBO 317 (Policy 13.02.01 § 1.A.n.2.b.i).

82. Pursuant to the Pennsylvania Department of Corrections' Policy 13.02.01: Access to Health Care, the Department of Corrections does not provide refractive eye surgery. Exh. D at MBO 326 (Policy 13.02.01 § 1.C.6).

83.     Pursuant to the Pennsylvania Department of Corrections' Policy 13.02.01: Access to Health Care, a service or procedure may be requested that cannot be approved per protocol. Exh. D at 315 (Policy 13.02.01 § 1.A.6.g). However, it must be approved by the Regional Medical Director or State Medical Director and go through utilization review. *Id.* (Policy 13.02.01 § 1.A.6.g).

        MATIS BAUM O'CONNOR
        *Electronically Filed*

        By: */s/ Julia F. Kurtz*
            M. Brian O'Connor, Esquire
            PA I.D. 56795
            Julia F. Kurtz, Esquire
            PA I.D. 322913
            Attorneys for Mark Mayle, MD

Matis Baum O'Connor
912 Fort Duquesne Blvd
Pittsburgh, PA 15222
(412) 338-4750

**CERTIFICATE OF COMPLIANCE**

I, the undersigned, hereby certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

        MATIS BAUM O'CONNOR
        *Electronically Filed*

        By: */s/ Julia F. Kurtz*
            M. Brian O'Connor, Esquire
            PA I.D. 56795
            Julia F. Kurtz, Esquire
            PA I.D. 322913
            Attorneys for Mark Mayle, MD

Matis Baum O'Connor
912 Fort Duquesne Blvd
Pittsburgh, PA 15222
(412) 338-4750

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that I am this day serving a true and correct copy of the foregoing Concise Statement of Material Facts on behalf of Mark Mayle, MD upon all counsel of record this 1st day of September, 2020, via the Electronic Filing System and by United States, First-class mail, postage prepaid, to the following:

> Henry Unseld Washington
> Inmate No. AM-3086
> S.C.I. Somerset
> P.O. Box 33028
> St. Petersburg, FL 33733
> PRO SE

                                        MATIS BAUM O'CONNOR
                                        *Electronically Filed*

                                By:  */s/ Julia F. Kurtz*
                                      M. Brian O'Connor, Esquire
                                      PA I.D. 56795
                                      Julia F. Kurtz, Esquire
                                      PA I.D. 322913
                                      Attorneys for Mark Mayle, MD

Matis Baum O'Connor
912 Fort Duquesne Blvd
Pittsburgh, PA 15222
(412) 338-4750