IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HENRY UNSELD WASHINGTON,          :
                                  :
                    Plaintiff,    :
                                  :          Civil Action No. 17-70
          v.                      :
                                  :
BARNHART, et al,                  :
                                  :
                    Defendants,   :
                                  :

## COMMONWEALTH DEFENDANTS'[1] BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.          Introduction

Plaintiff, an elderly inmate (with both self-professed and medically diagnosed dementia) incarcerated at SCI-Somerset and proceeding *pro se*, has filed a voluminous Amended Complaint (ECF 61) against many defendants.   This Motion is brought on behalf of the Commonwealth Defendants (listed in footnote one and hereafter "Defendants").   Plaintiff's allegations against Defendants, despite the nature of the Amended Complaint, are fairly simple and are summarized as follows along with the dates of the alleged incidents:

- Corrections Health Care Administrator (CHCA) Hyde – Plaintiff alleges that he denied Plaintiff medical care on many occasions, most often related to his eye but also regarding other conditions, sometimes in the presence of a doctor, sometimes by refusing to process his requests to see a doctor: 11/6/15, 4/27/16, 5/25/16, 6/2/16, 8/17/16, 10/26/16, 12/28/16, 3/27/17, 7/10/17, 7/18/17, 8/11/17, 9/18/17, 9/27/17, 12/26/17, 12/28/17;

---

[1] The Commonwealth Defendants are: Defendants Hyde, Costea, Cinko, McDonnell, Foster, Turner, Bowers, Maust, Sroka, Snyder, and Peschock.

- Unit Manager Costea – Plaintiff alleges that she put Plaintiff in a cell that caused him to have dreams/hallucinations of trauma being perpetuated against him and heart attack symptoms due to the cell's location on the bottom tier of the housing unit (for reasons unknown): 11/18/16, 11/21/16;

- Officer Foster – The same allegation as for Costea: 11/21/16;

- Officer McDannell – The same allegation as for Costea: 11/21/16;

- Unit Manager Bowers – The same allegation as for Costea but later dates: 10/6/17, 1/9/18;

- Grievance Coordinator Sroka – Plaintiff alleges that she refused to process many grievances beginning on 7/16/15;

- Activities Specialist Peschock – Plaintiff alleges that she did not choose Plaintiff as a basketball official beginning on 4/11/18;

- Chaplain Maust – Plaintiff alleges that he denied Plaintiff his religious books on 8/5/17;

- Captain Snyder – Plaintiff alleges that he denied Plaintiff his religious books on 4/8/17;

- Lieutenant Cinko – The same allegation as for Costea on 11/21/16; also Plaintiff alleges that he denied Plaintiff his religious books on 1/2/17 and 1/10/17;

- Lieutenant Turner – Plaintiff alleges that he witnessed denial of medical care on 11/22/16; and also that he denied Plaintiff his religious books on 1/18/17 and 1/26/17.

As best as Defendants can make out, Plaintiff is asserting the following claims based on these allegations:

1. Denial of medical care in violation of the Eighth Amendment against Hyde and Turner;

2.  Conditions of confinement in violation of the Eighth Amendment against Costea, Foster, McDannell, Bowers, and Cinko related to the cell placement;

3.  Denial of due process in violation of the Fourteenth Amendment against Sroka related to the processing of grievances;

4.  Denial of Plaintiff's free exercise of religion in violation of the First Amendment against Maust, Snyder, Cinko, and Turner related to the number of books he can have in his cell;

5.  Violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) against Maust, Snyder, Cinko, and Turner related to the number of books he can have in his cell;

6.  Retaliation in violation of the First Amendment against all of them;

7.  Denial of equal protection on the basis of race in violation of the Fourteenth Amendment against all of them; and

8.  Violation of the Older Americans Act, 42 U.S.C. §3025(a) against all of them.

For the reasons set forth below, all of the Commonwealth Defendants are entitled to summary judgment on all of the claims asserted against them.

## II.    Facts

See the Concise Statement for the complete facts of this case as it pertains to the Commonwealth Defendants.  The first section of the Concise Statement deals with Plaintiff's medical treatment, the second section with his housing, the third with his religious claims, the fourth with his basketball officiating, and the final section with his grievances.

In sum, Plaintiff alleges a lack of medical care, most especially related to his alleged Whipple's disease[2] and both of his eyes.  However, Plaintiff received copious amounts of medical care from multiple doctors, including specialists, for all manner of ailments, including his eyes and his gastrointestinal issues. He simply disagreed with their conclusions and treatment.  Further, his medical records show that he does not have Whipple's disease.

Plaintiff also alleges that he experiences traumatic dreams and hallucinations as well as heart attack symptoms when placed on a cell on the bottom tier of the housing unit.  However, he has no medical contraindication for any cell placement, and on another occasion when he wanted to move cells from one on the top tier to another on the top tier, the motivation was his desire to get good television reception.

Plaintiff also alleges that he has not been allowed to keep sufficient numbers of boxes of property in his cell to read the required number of books his religion, which he himself invented, requires.  However, SCI-Somerset has followed the dictates of a Settlement Agreement in a previous case on this matter, and indeed has allowed Plaintiff to have more property than the Settlement Agreement provides for.

Finally, Plaintiff also alleges that he was denied the opportunity to officiate prison basketball games, and it is true that he was not allowed to officiate certain fast-paced games, but that is because he could not physically keep up with the game.

### III.   Legal Standard

In ruling on a motion for summary judgment, there is a threshold inquiry as to the need for a trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Summary judgment is

---

[2] According to the Mayo Clinic, Whipple's disease is a rare bacterial infection that affects the joints and digestive system and interferes with normal digestion by impairing the breakdown of foods and hampering the body's ability to absorb nutrients. https://www.mayoclinic.org/diseases-conditions/whipples-disease/symptoms-causes/syc-20378946

appropriate "…if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56; Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986).

The party moving for summary judgment bears an initial burden of showing the absence of any genuine issues of fact; the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 250. The existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the required showing is that there be no genuine issue of material fact. Id. at 247-248.

Rule 56 does not allow a non-moving party to rely only on bare assertions, conclusory allegations, or suspicion in resisting a motion for summary judgment. Fireman's Insurance Company of Newark v. DeFresne, 676 F.2d 965, 969 (3d Cir. 1982). Instead, a court will conclude there is no issue for trial unless evidence in the record would allow a jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 249. A court considers the elements of a plaintiff's *prima facie* case under the substantive law when ruling on a motion for summary judgment. Id. at 248. Summary judgment must be granted "…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation, 477 U.S. at 322.

Speculation or surmise is no substitute for personal knowledge and is not sufficient to create a genuine issue of material fact to survive a summary judgment motion, even if the plaintiff has sworn to that speculation. Davis v. Harlow, 2014 WL 4250382 at *4 (W.D. Pa. 2014) (citing Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995); Curl v. International

<u>Business Machines Corp.</u>, 517 F.2d 212, 214 (5th Cir. 1975); <u>Manganaro v. Delaval Separator</u>

<u>Co.</u>, 309 F.2d 389, 393 (1st Cir. 1962)).

## IV.   <u>Argument</u>

A.   <u>Defendants Are Entitled to Summary Judgment on Many of Plaintiff's Claims Because</u>
<u>He Did Not Exhaust Administrative Remedies</u>

It appears that Plaintiff <u>may</u> have (Defendants are not conceding this point) exhausted

administrative remedies for his medical claim against CHCA Hyde (via Grievance 698803, Ex.

34), UM Bowers regarding housing placement (via Grievance 700732, Ex. 35), and his RLUIPA

claim (because the Court cannot award monetary damages for this claim).  Therefore, they are

not contesting exhaustion of administrative remedies for those particular claims.  However, for

all other claims, Plaintiff has not exhausted administrative remedies, because he did not request

monetary damages and/or he did not name any Commonwealth Defendants in his grievance.  See

the final section of the Concise Statement of Undisputed Material Facts.  Therefore, all

Commonwealth Defendants are entitled to summary judgment on all claims brought against them

except for those mentioned above due to lack of exhaustion.

The Prison Litigation Reform Act (PLRA) provides:

No action shall be brought with respect to prison conditions under
section 1983 of this title by a prisoner confined in jail, prison, or
other correctional facility until such administrative remedies as are
available are exhausted.

42 U.S.C. §1997e(a).  The Supreme Court has held "that the PLRA's exhaustion requirement

applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes."   <u>Porter v. Nussle</u>, 534 U.S. 516, 516, 122 S.Ct. 983, 984 (2002).

Exhaustion of administrative remedies in §1997e(a) cases is mandatory and no case may be

brought until the inmate-plaintiff has exhausted all available administrative remedies.  <u>See</u> <u>Booth</u>

v. Churner, 532 U.S. 731, 739, 121 S.Ct. 1819 (2001) (emphasis added).  Accordingly, "it is beyond the power of the court to excuse compliance with the exhaustion requirement."  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000); Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000) aff'd, 532 U.S. 73 (2001).

Proper exhaustion, in accordance with the DOC's grievance procedures, is required, or else the grievant has procedurally defaulted and failed to exhaust his administrative remedies. Woodford v. Ngo, 548 U.S. 81 (2006); Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004).  In order to properly exhaust as to a particular issue or claim or a particular defendant, the inmate-plaintiff is required to name that issue or claim or future defendant in the operative grievance or else the grievance is procedurally defective as to that issue, claim, or future defendant.  Boyd v. U.S., 396 Fed. Appx. 793, 796 (3d Cir. 2010) ("[T]o pursue a claim in federal court based on retaliation, he must first have exhausted administrative remedies for that claim. Winning on one claim does not excuse failure to exhaust on a different claim that is factually related."); Stewart v. Kelchner, 358 Fed. Appx. 291, 296-97 (3d. Cir. 2009) ("[I]n the March 2005 grievance, Stewart complained only of the allegedly inadequate medical treatment he received for his MRSA infection. Stewart did not make any reference to the allegedly unsanitary and overcrowded conditions that he claims gave rise to the alleged MRSA epidemic, or to any other action that he attributes to Kelchner in this §1983 action. Because the unprocessed grievance did not raise Stewart's claim against Kelchner, it cannot provide a basis for concluding that he exhausted his available remedies as to this claim."); Spruill, 372 F.3d at 234 (inmate-plaintiff is required to name individuals who are later sued in grievance or else grievance is procedurally defective as to those individuals); Payne v. Duncan, 692 Fed.Appx. 680 (3d Cir. 2017) (same).

7

Further, in order to exhaust his administrative remedies, an inmate must fully and properly exhaust all available process. Nyhuis, 204 F.3d at 67 ("exhaustion of *all* administrative remedies [is] mandatory"); Spruill, 372 F.3d at 227-28.   An inmate has exhausted his administrative remedies "whenever there is no further process available to the inmate within the grievance system (which would happen if, say, an inmate fails to file an administrative appeal)." Spruill, 372 F.3d at 227-28.  Indeed, even if an inmate attempts to appeal to final review but does not comply with the proper procedure in all respects, he has not properly exhausted.  Mack v. Klopotoski, 540 Fed. Appx. 108 (3d Cir. 2013) (inmate who appealed to final review but submitted handwritten copy of intermediate appeal rather than photocopy did not properly exhaust). In addition, rejection of a grievance appeal at final review for failing to comply with grievance procedures is not proper exhaustion, and does not serve to exhaust administrative remedies. Spearman v. Morris, 643 Fed.Appx. 82 (3d Cir. 2016) (affirming 2015 WL 6604312).

DC-ADM 804, which is the Department of Corrections' policy governing inmate grievances, provides, with regard to requesting relief in grievances, "If the inmate desires compensation or other legal relief normally available from a court, the inmate *must* request the specific relief sought in his/her initial grievance." In accordance with this requirement, the grievance form provides the following instruction: "State all relief that you are seeking."  This mandatory language has been held by the Courts to require an inmate who seeks legal relief from a Court to state in the grievance what relief is sought (e.g. monetary relief) or else he has not properly exhausted administrative remedies as to any legal remedies not mentioned in that grievance. Wright v. Sauers, 2017 WL 3731957 (W.D. Pa. 2017) affirmed by Wright v. Sauers, 729 Fed.Appx. 225 (3d Cir. 2018); Smith v. DOC, 2018 WL 279363 (W.D. Pa. 2018); Mobley v. Snyder, 2015 WL 5123909 at *7-9 (M.D. Pa. 2015) (favorably cited by Mayon v. Capozza, 2017

WL 476790 at *8 (W.D. Pa. 2017)); Sanders v. Beard, 2013 WL 1703582 at *6 (M.D. Pa. 2013);

Collins v. Walsh, 2012 WL 3536803 at *3-4 (M.D. Pa. 2012).

The mandatory language in DC-ADM 804 quoted above was added to the policy in response to the Third Circuit's decision in Spruill v. Gillis, 372 F.3d 218, 233-34 (3d Cir. 2004). In Spruill, the Third Circuit rejected an exhaustion defense based on the claim that an inmate must include a request for money damages in his grievance based on the discretionary language of the policy in effect at that time which stated, "The inmate may include a request for compensation or other legal relief normally available from a court."  Since the decision in Spruill, the language of the policy has changed and courts interpreting the language of the policy after Spruill have found the requirement to include a request for compensation to be mandatory.

As Plaintiff did not request monetary damages and/or did not name any Commonwealth Defendant except as provided in the first paragraph on this section, Defendants are entitled to summary judgment on all claims except those mentioned above.

As the next several sections show, Defendants are also entitled to summary judgment on all claims on the merits.

B.    Defendants Hyde and Turner Are Entitled to Summary Judgment on the Eighth Amendment Denial of Medical Care Claim

Plaintiff alleges that Corrections Health Care Administrator (CHCA) Hyde on many occasions, and possibly Lt. Turner, on one occasion, either denied or witnessed the denial by others of medical care.  However, as the Concise Statement and Plaintiff's medical records attached as Exhibit 1 show, Plaintiff received copious amounts of medical care.  As for his primary medical complaints, his medical records show that he does not have Whipple's disease. He received extensive treatment on both eyes including surgery on his left eye during the period covered by this lawsuit and surgeries on his right eye in the years preceding that period.  Finally,

he was under the medical care of many doctors and mid-level practitioners with such thorough care that non-medical personnel such as CHCA Hyde and Lt. Turner had no reason to believe that he was not being treated properly for his conditions.  In the end, what this claim amounts to is nothing more than a disagreement on medical treatment, which is never sufficient to state an Eighth Amendment claim, so Defendants are thus entitled to summary judgment.

A denial of medical care claim is a type of Eighth Amendment conditions of confinement claim in which a two-prong test is applied. Plaintiff must demonstrate: (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials must have a "sufficiently culpable state of mind," which means deliberate indifference to that risk.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

Not every claim by a prisoner that he has not received adequate medical treatment states a constitutional violation.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  Rather, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A "serious" medical condition is one "such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death." Tsakonas v. Cicchi, 308 Fed.Appx. 628, 632 (3d Cir. 2009) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir.1991)).  For purposes of this Motion only, the Defendants concede that Plaintiff's medical conditions were serious (except for Whipple's disease, which Plaintiff does not have).

"Deliberate indifference" requires obduracy and wantonness that constitutes recklessness or a conscious disregard of a serious risk.  Rouse, 182 F.3d at 197 (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)). Deliberate indifference is a subjective standard, and in order to satisfy it,

an inmate-plaintiff must show that a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842. To plead deliberate indifference, a plaintiff must show that each particular defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and … must also draw the inference." Malles v. Lehigh Co., 639 F.Supp.2d 566, 579 (E.D. Pa. 2009) (citing Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)).

The "deliberate indifference" standard in the context of medical treatment is fundamentally different than medical negligence. This is a difference in kind and not merely a difference in degree. That is, it does not hold that if a medical professional makes a mistake, it is negligence, but if the medical professional makes a very bad mistake, it is deliberate indifference. Rather, allegations that would allege a medical malpractice negligence claim never rise to the level of deliberative indifference and are therefore not sufficient to state a constitutional claim. Estelle, 429 U.S. at 106; Rouse, 182 F.3d at 197. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Pearson v. Prison Health Service, 850 F.3d 526, 534 (3d Cir. 2017) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). "Federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Id. at 539 (quoting United States ex. rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

Deliberate indifference to a prisoner-plaintiff's serious medical needs consists of "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." Pearson, 850 F.3d at 534 (quoting Estelle, 429 U.S. 104-105). That denial or delay must be motivated by "non-medical factors". Pearson, 850 F.3d at 537. Accordingly, courts

have found deliberate indifference in the following circumstances: (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. Lanzaro, 834 F.2d at 347; Pearson at 538; Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993)

Disagreement over whether medical treatment was proper "does not support a claim of an eighth amendment violation." Pearson, 850 F.3d at 535 (citing Monmouth County Correctional Institute v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)). A contention that more or different treatment should have been provided is a "classic example of a matter for medical judgment" that does not rise to the level of a constitutional violation. Estelle at 107; White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "It is well established that as long as a physician [or other medical professional] exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Id. (quoting Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990)). An "error in medical judgment" is insufficient to show deliberate indifference and cannot serve as the basis for an Eighth Amendment claim. Durmer, 991 F.2d at 69; White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990); Lee v. Jin, 2014 WL 3778326 at *3 (W.D. Pa. 2014).

If a plaintiff claims that the adequacy of his care constituted a constitutional violation, the case will only proceed to trial is there is a genuine issue of fact on *both* the adequacy of care *and* the defendant's intent.[3,4]  This is because "the mere receipt of inadequate medical care does not

---

[3] In Pearson, the Court makes a distinction between on one hand, a constitutional claim involving the denial or delay of medical care and, on the other hand, a constitutional claim involving the adequacy of medical care.  In both types of claims, the deliberate indifference standard is the

itself amount to deliberate indifference – the defendant must also act with the requisite state of mind when providing that inadequate care." Pearson at 535 (citing Durmer, 991 F.2d at 69 n.13). Moreover, the Eighth Amendment cannot be violated for refusing to give medical care when the plaintiff refuses to comply with a legitimate treatment protocol due to his own divergent opinion. Iseley v. Beard, 200 Fed.Appx. 137, 142 (3d Cir. 2006).

Once a prisoner plaintiff comes under the care of medical professionals, a non-medical prison official cannot be deliberately indifferent for failing to intervene in the medical treatment unless that non-medical official has reason to believe or actual knowledge that prison medical providers are mistreating the prisoner. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); Spruill v. Gillis, 372 F.3d 218, 236-37 (3d Cir. 2004); Roberts v. Tretnick, 2014 WL 4218249 at *3-4 (W.D. Pa. 2014); Giles v. Medical Contractors CMS, 723 F.Supp.2d 710, 717 (D. Del. 2010).

The Third Circuit has explained that, following the division of labor in a prison, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. Spruill, 372 F.3d at 236. It continued, "Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain the division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability." Id.

---

same and must be met. In the adequacy of care claim, there is an additional requirement that the plaintiff prove that the care was, in fact, inadequate.

[4] As an example, in Pearson, the only claim that survived summary judgment was one in which the nurse refused to assist the plaintiff to get into a wheelchair and made him crawl on the ground to get to it, then did not provide him any medical care throughout the night despite Plaintiff's past medical complaints and his excruciating pain.

Accordingly, where a prisoner is being treated by a physician, a nurse cannot be liable for denial or delay or medical care unless the nurse has reason to believe that the doctor is mistreating the prisoner. <u>Pearson v. Prison Health Service</u>, 850 F.3d 526, 540 n.4 (3d Cir. 2017). Likewise, a corrections health care administrator (CHCA) is an administrative official and subject to the limitations on suits for denial or delay of medical care against non-medical personnel. <u>Roberts v. Tretnick</u>, 2014 WL 4218249 at *3-4 (W.D. Pa. 2014).

For a corrections officer to be liable for denying a prisoner access to medical care, the inmate-plaintiff must show that the officer knew of and disregarded an excessive risk to the prisoner's health.  <u>Perkins v. Schwappach</u>, 399 Fed. Appx. 759, 761 (3d Cir. 2010).  Even if the corrections officer knew of a risk to the prisoner's health, he must still personally draw the inference that the prisoner faced a substantial risk of serious harm if medical care was denied. <u>Id.</u>

As set forth extensively in the Concise Statement, Defendants Hyde and Turner are entitled to summary judgment on Plaintiff's denial of medical care claim.

C.     <u>Defendants Costea, Foster, McDannell, Bowers, and Cinko Are Entitled to Summary Judgment on the Eighth Amendment Conditions of Confinement Claim</u>

Plaintiff claims that these Defendants violated his Eighth Amendment rights on various occasions in which one or another of them ordered that he be placed or actually placed him in a cell on the bottom tier. According to Plaintiff, this caused, for yet to be explained reasons, Plaintiff to have nightmares, terrifying hallucinations of abuse, and heart attack symptoms.  As detailed in the Concise Statement, Plaintiff has no medical contraindications for any particular cell placement. He has single-cell status, which limits where he can be placed, and Plaintiff's unit manager checked his file and spoke to the medical department about any reasons why he might need to be on the bottom tier. There were no reasons.  Notably, on another occasion when

14

Plaintiff wanted to be moved from one top tier cell to another top tier cell, his motivation was to have a cell that maximized his television reception.   Defendants are entitled to summary judgment on this claim.

To state an Eighth Amendment conditions of confinement claim, a plaintiff must demonstrate:  (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials must have a "sufficiently culpable state of mind," which means deliberate indifference to that risk.   Farmer v. Brennan, 511 U.S. 825, 834 (1994); Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

To meet the objective prong, the plaintiff must show that he has been deprived of the "minimal civilized measure of life's necessities."  Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (citing Sandin v. Connor, 515 U.S. 472 (1995); Young v. Quinlan, 960 F.2d 351, 361 (3d Cir. 1992); McCluskey v. Vincent, 505 Fed. Appx. 199, 204 (3d Cir. 2012) (internal quotations omitted).   Only extreme deprivations are sufficient to present a claim for unconstitutional conditions of confinement.  Dockery v. Beard, 509 Fed. Appx. 107, 112 (3d Cir. 2013) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981); Hudson v. McMillian, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992)).

Prison conditions are often less than ideal, but only extreme deprivations of life's basic necessities violate the Eighth Amendment's prohibition on cruel and unusual punishment.   To the extent that prison conditions are restrictive and even difficult, they are part of the penalty that criminal offenders pay for their offenses against society.   Farmer, 511 U.S. at 834; Rhodes, 452 U.S. at 347; Booth v. King, 228 Fed. Appx. 167, 171 (3d Cir. 2007) (quoting Tillery v. Owens, 907 F.2d 418, 426-27 (3d Cir. 1990)).   While the Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement, the constitution does not mandate

comfort.  Carson v. Mulvihill, 488 Fed. Appx. 554, 560 (3d Cir. 2012) (quoting Rhodes, 452

U.S. at 349); Dockery, 509 Fed. Appx. at 112.

      A prison official cannot be found liable under the Eighth Amendment "unless the official

knows of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference".  Farmer, 511 U.S. at 837-38; Hamilton v. Leavy,

117 F.3d 742, 476 (3d Cir. 1997); Bistrian v. Levi, 696 F.3d 352, 367-68 (3d Cir. 2012).  This is

a subjective standard.  Additionally, "an official's failure to alleviate a significant risk that he

should have perceived but did not, while no cause for commendation, cannot under our cases be

condemned as the infliction of punishment." Farmer, 511 U.S. at 837-38.

      It is well-established that there is no constitutional right for an inmate to be celled in a

particular place, or under particular circumstances.  "[B]y virtue of their convictions, inmates

must expect significant restrictions, inherent in prison life, on rights and privileges free citizens

take for granted." McKune v. Lile, 536 U.S. 24, 39-40 (2002); Podhorn v. Grondolsky, 350 Fed.

Appx. 618, 620 (3d Cir. 2009) ("[P]risoners have no constitutional right to be assigned to a

particular institution, facility or rehabilitative program.").  Rather, "the prison has a penological

interest in the housing placement of its inmates and '[i]t is well settled that the decision where to

house inmates is at the core of prison administrators' expertise.'") Thomaston v. Meyer, 519 Fed.

Appx. 118, 119 (3d Cir. 2013) (quoting McKune, 536 U.S. at 39).

      Likewise, inmates also have no right to a particular cell.  Brown v. Sobina, 2009 WL

5173717 at *8 (W.D. Pa. 2009) (citing Rhodes v. Chapman, 452 U.S. 337 (1981)); Smith v.

Thomas, 2014 WL 2091869 at *7 (M.D. Pa. 2014) (citing Sheehan v. Beyer, 51 F.3d 1170, 1174

(3d Cir. 1995) for proposition that inmate has no right to be in one particular cell versus another);

<u>Toussaint v. Good</u>, 276 Fed.Appx. 122, 124 (3d Cir. 2008); <u>Lim v. Cruz</u>, 2015 WL 1185982 at *7 (M.D. Pa. 2015).

Here, the only evidence is that Plaintiff asserts without any medical support that he has psychological and physical issues when he is placed in a bottom tier cell but not when he is placed in a top tier cell.  This assertion does not make sense.  Plaintiff has no right to placement on the bottom tier, and he has no objective medical need for placement on the bottom tier. This, quite clearly, is not an extreme deprivation repugnant to contemporary standards of decency. The objective prong of this claim is not met.  Nor is there any evidence that any of the Defendants exhibited deliberate indifference in their choice of cell placement or in carrying out orders of others regarding choice of cell placement.  As such, Defendants are entitled to summary judgment on this claim too.

   D.      <u>Defendant Sroka Is Entitled to Summary Judgment on the Fourteenth Amendment Due Process Claim</u>

Plaintiff claims that former Grievance Coordinator Sroka violated his due process rights by not processing at all or not processing correctly his grievances.  Plaintiff leaves out that he has filed dozens upon dozens of grievances that have been processed, answered, and appealed to final review.  In fact, in Defendants' Appendix, 38 of the exhibits are grievances, and this does not count grievances rejected for contesting other grievances or grievances on subject matters unrelated to this lawsuit that were not included in the Appendix.

Moreover, aside from Plaintiff's claim of mishandling grievances having no factual support, it is well-settled that a prisoner has no due process rights that are implicated by the prison grievance system, as access to a prison grievance procedure is not a constitutionally-mandated right and confers no liberty interest on a prisoner.  Therefore, any allegations about mishandling the grievance system do not state a cognizable claim.  <u>Williams v. Armstrong</u>, 566

17

Fed.Appx. 106, 108-09 (3d Cir. 2014); <u>Fears v. Beard</u>, 532 Fed.Appx. 78, 81 (3d Cir. 2013);

<u>Williams v. Folino</u>, 2015 WL 1212951 at *8 (W.D. Pa. 2015).  Defendant Sroka is entitled to

summary judgment on this claim.

E.      <u>Defendants Maust, Snyder, Cinko, and Turner Are Entitled to Summary Judgment on the
        First Amendment Free Exercise of Religion Claim</u>

Plaintiff claims that his rights under the Free Exercise Clause were violated because he

was not allowed to have enough property in his cell to read four allegedly religiously-mandated

books per day as required by the religion that he personally invented.  However, Plaintiff entered

into a Settlement Agreement and Release in a prior lawsuit that expressly set forth the amount of

property he may have in his cell at any one time as well as the rules for exchanging property.  As

shown in the Concise Statement, at all times SCI-Somerset authorities followed the rules of this

Settlement Agreement, and indeed allowed Plaintiff to have even more property in his cell than it

provided for. Plaintiff himself admitted by entering into the Settlement Agreement that it was

sufficient to allow his religious practices to proceed unhindered.  Defendants are entitled to

summary judgment on this claim.

In order for the First Amendment's free exercise clause to be implicated, two threshold

requirements must first be met.  First, the belief must be sincerely held, and second it must be

religious in nature.  <u>DeHart v. Horn</u>, 227 F.3d 47, 51 (3d Cir. 2000).  If there is a prison

regulation that impinges on the inmate's constitutional right to free exercise of his religion, "the

regulation is valid if it is reasonably related to legitimate penological interests." <u>O'Lone v. Estate</u>

<u>of Shabazz</u>, 482 U.S. 342, 349 (1987); <u>Williams v. Morton</u>, 343 F.3d 212, 216 (3d Cir. 2003).

"This approach ensures the ability of corrections officials to anticipate security issues and adopt

innovative solutions to the intractable problems of prison administration and avoids unnecessary

intrusion of the judiciary into problems particularly ill-suited to resolution by decree." <u>O'Lone</u>,

482 U.S. at 349-50.   Importantly, "the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." Williams, 343 F.3d at 217.

If there is a prison regulation that impinges on an inmate's constitutional right to free exercise of his religion and if the belief is sincerely held and religious in nature, the analysis then turns to the four-factor test set forth in Turner v. Safley, 482 U.S. 78, 89 (1987) and applied to the free exercise clause in O'Lone to determine whether the restriction on the prisoner's free exercise of religion is constitutional.   This four-factor test requires courts to consider: (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether obvious, easy alternatives exist.   DeHart v. Horn, 390 F.3d 262, 268 (3d Cir. 2004); Sharp v. Johnson, 669 F.3d 144 (3d Cir. 2012).

The first factor is foremost, but it does not subsume the rest of the inquiry.   Sutton v. Rasheed, 323 F.3d 236, 253 (3d Cir. 2003).   For the second factor, the court must consider whether the inmate has "alternative means of practicing his or her religion generally, not whether the inmate has alternative means of engaging in any particular practice."   Sutton, 323 F.3d at 255, quoting DeHart, 227 F.3d at 55.   "[W]here other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation."   DeHart, 227 F.3d at 53 (quoting Turner, 482 U.S. at 90).   The third and fourth factors "focus on the specific religious practice or expression at issue and the consequences of accommodating the inmate for guards, for other inmates, and for the allocation of prison resources."   DeHart, 227 F.3d at 57.

In this case, it is not actually a prison regulation that is at issue, but rather Plaintiff's own Settlement Agreement in a previous case that dictates the contours of the amount of property (and therefore, religious books) that he may have in his cell at any one time, in his stored property at any one time, and how he is to exchange property.   At that core of this matter, Plaintiff wishes to exceed the limits of the Settlement Agreement and has resisted attempts to bring his property into compliance in accordance with that Agreement.   However, there is nothing in the record to explain how Plaintiff's own Settlement Agreement, and the generous limits it imposes on his property, violates his rights now when it did not at the time of the Settlement Agreement.

For purposes of this analysis then, Defendants consider the "regulation" to be the decision by the DOC to allow Plaintiff to have the amount of property (including religious literature) required by the Settlement Agreement but not to go beyond that limit.   First, a rational connection between that limit and a neutral government interest certainly exists, as the government has an interest in preventing prisoners from accumulating unlimited property, causing prisons to run out of space and posing a fire and safety hazard.   Second, an alternative means already exists, as Plaintiff has already been granted extra property in his Settlement Agreement over and above what he would have had absent it, and this amount was agreed to by Plaintiff in signing the Settlement Agreement as sufficient for his religious needs.   Third, an accommodation of even more property would overburden the prison, not to mention arouse jealousy in other prisoners who do not get to have nearly that amount of property.   And fourth, no obvious, easy alternatives exist.   It bears repeating that it was Plaintiff himself who agreed to these property limits in his Settlement Agreement and who is now trying to circumvent those limits.   Defendants are thus entitled to summary judgment on this claim.

20

F.    Defendants Maust, Snyder, Cinko, and Turner Are Entitled to Summary Judgment on the RLUIPA Claim

Plaintiff also asserts that limiting his property to the amount he agreed to in his Settlement Agreement violates RLUIPA.  Defendants are also entitled to summary judgment on this claim.

First, RLUIPA does not permit actions against government employees in their individual capacities.  Sharp v. Johnson, 669 F.3d 144, 153-55 (3d Cir. 2012).  RLUIPA does not allow for the recovery of monetary damages, only injunctive and declaratory relief, against a defendant in his official capacity.  Small v. Wetzel, 528 Fed.Appx. 202, 208 (3d Cir. 2013) at *4.  In this case, it appears that Plaintiff is suing each of these Defendants in their individual capacities, as he is contesting the decision allegedly made and/or implemented by each one to enforce the limits of his property as delineated in the Settlement Agreement.  Therefore, they are entitled to summary judgment for this reason alone.

Beyond that, Section 3 of the RLUIPA provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling governmental interest."  Holt v. Hobbs, 135 S.Ct. 853, 860 (2015), quoting 42 U.S.C.§2000cc-1a.

There are four factors to consider in a RLUIPA claim.  First, the requested accommodation must be based on the inmate's sincere religious belief.  Holt, 135 S.Ct. at 862-63.  There is no evidence one way or another here if Plaintiff's religious beliefs are sincere.

Second, the governmental policy must substantially burden the inmate's exercise of his religion.  Id.  For the purposes of RLUIPA, a substantial burden exists where: "(1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs."  Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007).  In Holt, the Supreme Court held that there was a substantial burden where the inmate had to, pursuant to policy, "engage in conduct that seriously violates his religious beliefs" or face "serious disciplinary action".  Id. at 862.  The burden is on the inmate to prove that he faced a substantial burden.  Id. at 863.

Here, far from a substantial burden, Plaintiff is merely being held to the property limits that he himself agreed to in his Settlement Agreement.  He has not had to forfeit any benefit, nor has he had to modify his behavior in any way.  Rather, his property came to exceed the permitted level, and he had to reduce it to that level, a level that he himself agreed to as sufficient.  Because there is no substantial burden on Plaintiff's religious beliefs, the analysis can end here.

If the court should conclude otherwise, the third determination is whether there is a compelling governmental interest, which must be a focused inquiry that applies the restriction to the particular claimant.  Holt, at 863.  However, this inquiry must be undertaken in light of the importance of order, security, and the granting of deference to prison administrators, with "particular sensitivity" to security concerns.  RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety."  Washington, 497 F.3d at 283 (citing Cutter v. Wilkinson, 544 U.S. 709, 722 (2005)).  In this case, there is a compelling governmental interest in limiting the amount of property that any one inmate

possesses in order to keep the prison from being overrun with inmate property and to maintain safety and security, both in terms of things such as fire hazards and things such as contraband, as officers would have unlimited property to search through if there are no limits.

Fourth, the restriction must be the least restrictive means of furthering the compelling governmental interest.  Holt at 863-64.  The least restrictive means test requires the government to "show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party."  Id. at 864.  In the instant case, there is no other means to achieve the desired goal than to put a limit on the amount of property an inmate can accumulate.

Additionally, when considering all of the above factors, the court should bear in mind the unique challenges faced by prison administrators.

> We emphasize that although RLUIPA provides substantial protection for the religious exercise of institutionalized persons, it also affords prison officials ample ability to maintain security. We highlight three ways in which this is so. First, in applying RLUIPA's statutory standard, courts should not blind themselves to the fact that the analysis is conducted in the prison setting. Second, if an institution suspects that an inmate is using religious activity to cloak illicit conduct, "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." Cutter v. Wilkinson, 544 U.S. 709, 725, n. 13, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). See also Hobby Lobby, 573 U.S., at ——, n. 28, 134 S.Ct., at 2774, n. 28. Third, even if a claimant's religious belief is sincere, an institution might be entitled to withdraw an accommodation if the claimant abuses the exemption in a manner that undermines the prison's compelling interests.

Holt at 866-67.

Again, in this case Plaintiff is merely required to adhere to his own limits as set forth in his own Settlement Agreement concerning the amount of property he may have and how he is to exchange it.  There is no substantial burden on Plaintiff and no less restrictive means for the

DOC to operate in this regard.  For these reasons as well, Defendants are entitled to summary judgment on this claim.

    G.    <u>Defendants Are Entitled to Summary Judgment on the Retaliation Claims</u>

In his Amended Complaint, Plaintiff claims that all the actions allegedly taken against him were due to both retaliation for filing grievances/lawsuits and racial animus.  Defendants treat the retaliation portion of this rote assertion in this section.  Defendants are entitled to summary judgment on all Plaintiff's retaliation claims.

To establish a claim for retaliation, an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003); <u>Rauser v. Horn</u>, 341 F.3d 330 (3d Cir. 2001); <u>Davis v. Harlow</u>, 2014 WL 4250382 at *4 (W.D. Pa. 2014); <u>Laurensau v. Pluck</u>, 2013 WL 4779010 at *10 (W.D. Pa. 2013).

If a plaintiff is able to meet his *prima facie* case, the burden then shifts to the defendants to prove by a preponderance of the evidence that they would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.  <u>Rauser v. Horn</u>, 241 F.3d 330, 334 (3d Cir. 2001); <u>Davis</u> at *4.

Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner.  <u>Laurensau</u> at *11 (citing <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996) and <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995)).

The adverse action must be sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  <u>Mitchell</u>, 318 F.3d at 530; <u>Wilson v. Marrow</u>, 917 A.2d 357,

364 (Pa. Cmwlth. 2007); <u>Huertas v. Sobina</u>, 476 Fed.Appx. 981, 984 (3d Cir. 2012).  This is an objective inquiry, so the peculiarities of a plaintiff's subjective state of mind are not relevant. <u>Bistrian v. Levi</u>, 696 F.3d 352, 376 (3d Cir. 2012).

Speculation or surmise is no substitute for personal knowledge and is not sufficient to state a retaliation claim.  <u>Davis v. Harlow</u>, 2014 WL 4250382 at *7 (W.D. Pa. 2014) (citing <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888 (1990); <u>Goenaga v. March of Dimes Birth Defects Foundation</u>, 51 F.3d 14, 18 (2d Cir. 1995); <u>Curl v. International Business Machines Corp.</u>, 517 F.2d 212, 214 (5th Cir. 1975); <u>Manganaro v. Delaval Separator Co.</u>, 309 F.2d 389, 393 (1st Cir. 1962)).

<u>Medical Care Against Hyde and Turner</u>

As detailed extensively already and in the Concise Statement, Plaintiff received an enormous amount of medical care.  He was not refused any medical care, so there was no adverse action and no causation.  Therefore, these Defendants are entitled to summary judgment.

<u>Cell Placement Against Costea, Foster, McDannell, Bowers, and Cinko</u>

Again, as already detailed above, Plaintiff had no medical need for placement in any particular cell, so he did not suffer any adverse action by being placed on the bottom tier.  Nor is there any evidence that any placement decisions were made for retaliatory motives.  Defendants are entitled to summary judgment.

<u>Grievance Processing Against Sroka</u>

Plaintiff's grievances were processed, as evidenced by the 38 attached as exhibits to this Motion.  Therefore, there was no adverse action.  Nor is there any evidence that Plaintiff's grievances were processed differently than usual in any way for any retaliatory motive. Defendant Sroka is entitled to summary judgment.

Basketball Officiating Against Peschock

This claim has not yet come up in this Brief. Plaintiff badly asserts that his restriction from officiating certain basketball games by Activities Coordinator Peschock in April 2018 was retaliatory. However, on its face, this is not an adverse action. Not being able to officiate certain basketball games would not deter a reasonable person of ordinary firmness from taking a constitutionally protected activity. Nor is there any evidence of causation. Rather, the only evidence is that Plaintiff was unable to keep up with the games for the younger inmates and was difficult to hear. Consequently, he was restricted from officiating the more fast-paced games. This was not only the decision of Ms. Peschock but also at the request of the head inmate officiator. Plaintiff now has been given another opportunity to officiate some games for younger inmates, and he was always allowed to officiate basketball and football games for the older inmates. (Ex. 38, Ex. 50) Defendant Peschock is entitled to summary judgment.

Religious Books Against Maust, Snyder, Cinko, and Turner

As already stated, Plaintiff was not prevented from having the property to which he was entitled per the terms of his Settlement Agreement. Therefore, there was no adverse action. Nor is there any evidence of causation or that the enforcement of the terms of Plaintiff's Settlement Agreement was done for retaliatory motives. Defendants are entitled to summary judgment on this claim of retaliation as well.

H.    Defendants Are Entitled to Summary Judgment on the Equal Protection Claims

Just as with retaliation, Plaintiff claims that every action allegedly taken against him was motivated by racial animus. Claims of racial discrimination by prisoners fall under the equal protection clause. Bacon v. Minner, 229 Fed.Appx. 96 (3d Cir. 2007) (citing Turner v. Safley, 482 U.S. 78, 84 (1987)).

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). The general rule is that the state action is valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate government interest. City of Cleburne, 473 U.S. at 440. This general rule only gives way when the classification is suspect, in which case a higher level of scrutiny applies. Id. Race is a suspect class, including in prisons, and strict scrutiny is applied such that any racial classifications must be narrowly tailored measures that further compelling governmental interests. Johnson v. California, 543 U.S. 499, 505 (2005).

The reasons for the decisions made with respect to Plaintiff have already been set forth at length. There is no evidence whatsoever that any Commonwealth Defendant did something or did not do something with regard to Plaintiff because he is African American or that he was treated differently than any other inmate regardless of race in the decisions made with respect to him. A lack of evidence that a defendant has treated the plaintiff any differently than other members of his class is fatal to an equal protection claim. Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). This is true even when a suspect class is involved. City of Cleburne at 439; Whitney v. Wetzel, 649 Fed.Appx. 123, 128 (3d Cir. 2016). Therefore, Defendants are entitled to summary judgment on Fourteenth Amendment Equal Protection claims.

I.    Defendants Are Entitled to Summary Judgment on the Older Americans Act Claim

Sprinkled throughout his Amended Complaint are conclusory labels that this or that action taken by some Defendant violated the Older Americans Act, specifically 42 U.S.C. §3025(a). However, that statute relates to state participation in federal grants to states

27

concerning state and community programs on aging and appears to have no applicability to the allegations in this case.  Therefore, to the extent that Plaintiff is asserting any causes of action based on this statute, Defendants are entitled to summary judgment.

**V.**      <u>**Conclusion**</u>

For the reasons stated above, all of the Commonwealth Defendants are entitled to summary judgment on all of the claims asserted against them.

Respectfully submitted,


JOSH SHAPIRO
Attorney General

/s/ *Justin A. Gayle*
JUSTIN A. GAYLE
Deputy Attorney General
PA I.D. No. 327119

TIM MAZZOCCA
Senior Deputy Attorney General

KAREN M. ROMANO
Chief Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222
September 2, 2020

28

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the within ***Brief in Support of Motion for Summary Judgment*** was served upon the following individual at the State Correctional Institution at Somerset *via* hand delivery through the Department of Corrections.

This alternative method of service is being used due to the COVID-19 emergency.


**HENRY WASHINGTON**
AM-3086
SCI Somerset


By:    */s/ Justin A. Gayle*
JUSTIN A. GAYLE
Deputy Attorney General



OFFICE OF ATTORNEY GENERAL
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222


Date:  September 2, 2020